# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.  NO. 3:15-CR-00021

JOSEPH GRANTHAM HAMMER

## MEMORANDUM OPINION AND ORDER

This criminal action is before the Court for the 18 U.S.C. § 4243 determination of the present mental condition of Joseph Grantham Hammer. Because the Court finds that Hammer has failed to show that his release would not create a substantial risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect, the Court will commit Hammer to the custody of the Attorney General.

## I
## Procedural History

On March 25, 2015, Hammer was indicted on a single count of attempted bank robbery in violation of 18 U.S.C. § 2113(a). Doc. #1. On April 24, 2015, Hammer served notice of an intention to assert an insanity defense to the sole count of the indictment. Doc. #15. On October 8, 2015, the Court, acting on joint motion of the parties, granted Hammer a non-jury trial, "subject to a finding by the Court before trial that Defendant is competent to waive his right to jury trial and is competent to stand trial." Doc. #21. After a competency hearing one week later, on October 15, 2015, this Court entered an order finding Hammer competent to waive his right to jury trial and to stand trial. The same day, the Court held a non-jury trial pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure. Before the trial, both parties waived the right to request special findings in support of the verdict. Doc. #29.

At the conclusion of trial, the Court found Hammer not guilty only by reason of insanity. Doc. #33. Accordingly, the Court ordered that:

> Defendant be "committed to a suitable facility until such time as he is eligible for release … ." Furthermore, in accordance with 18 U.S.C. § 4243(b), it is further ordered that a psychiatric and/or psychological examination of Defendant be conducted, and that a report thereof be filed with this Court, pursuant to the provisions of 18 U.S.C. §§ 4247(b) and (c). As provided in 18 U.S.C. § 4243(c) and 18 U.S.C. §§ 4247(b) and (c), such evaluation shall be conducted within thirty (30) days of this Order, and shall specifically address whether Defendant is suffering from a mental disease or defect such that his release would create a substantial risk of bodily injury to another person or serious damage to property of another.
>
> The United States Marshals Service is hereby ordered to transport Joseph Hammer to the medical facility designated by the United States Bureau of Prisons for the purpose of conducting the statutorily required evaluation. Following said evaluation, the defendant shall be returned to the Northern District of Mississippi so that a hearing can be conducted pursuant to 18 U.S.C. §§ 4243(c) and (d), and 18 U.S.C. § 4247(d).

*Id.* The report of Gillespie Wadsworth, Psy. D., Forensic Psychologist, was subsequently received by the Court. Doc. #34.

The Court held the § 4243 hearing on May 19, 2016. Doc. #39. At the hearing, the Government presented the live testimony of Dr. Wadsworth. *Id.* Hammer testified on his own behalf and presented the live testimony of his mother, Mary Hammer.[1] *Id.*

## II
## Standard

In a § 4243 hearing:

> a person found not guilty only by reason of insanity of an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage, has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect. With respect to any other offense, the person has the burden of such proof by a preponderance of the evidence.

---

[1] To avoid confusion the Court will refer to Defendant as "Hammer," and his mother as "Mary."

18 U.S.C. § 4243(d). Pursuant to subsection (e) of the statute:

> If, after the hearing, the court fails to find by the standard specified in subsection (d) of this section that the person's release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment.

18 U.S.C. § 4243(e). In determining the appropriate evidentiary standard, the inquiry "turns ... not on any fact particular to [the defendant], but rather, whether, as a general matter, the crime [charged] involves 'bodily injury to, or serious damage to the property of, another person, or a substantial risk of such injury or damage.'" *United States v. Gilgert*, 314 F.3d 506, 514 (10th Cir. 2002).

Here, Hammer was indicted and convicted under 18 U.S.C. § 2113(a) for the crime of "attempt[ing] to take by force and violence or by intimidation from the persons and from the presence of bank employees money in the form of United States currency ...." Doc. #1; Doc. #33. The Court has not found a case considering whether a conviction under § 2113(a) involves a substantial risk of bodily injury or serious property damage.[2] However, because the Court concludes for the reasons below that Hammer has not satisfied even a preponderance standard, it need not decide which burden of proof a § 2113(a) conviction requires under § 4243.[3]

---

[2] The Fifth Circuit has held that a defendant convicted under 18 U.S.C. §§ 2113(a) and (d) was found guilty of a crime involving a substantial risk of bodily injury or property damage requiring a clear and convincing presentation of evidence under § 4243. *United States v. Jackson*, 19 F.3d 1003, 1007 n.3 (5th Cir. 1994). A conviction under subsection (d) requires a finding that the defendant assaulted or "put[] in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(d). It is unclear whether the Fifth Circuit relied on subsection (a), subsection (d), or both in applying the clear and convincing standard.

[3] The Court notes, however, that an attempt to rob a bank through force and violence necessarily involves a risk of bodily injury. Likewise, the use of intimidation to rob a bank would seem to carry a risk of bodily injury to bystanders by virtue of the possibility of an armed police or security response. *See generally Gilgert*, 314 F.3d at 515 (noting threat to bank president "creates a serious risk to…officers, people, and property in the vicinity of the maker of the threat").

# III
# Evidence

As explained above, Dr. Gillespie Wadsworth, Mary Hammer, and Joseph Hammer testified at the § 4243 hearing.

### A. Dr. Wadsworth's Testimony

Wadsworth is a forensic psychologist at the federal medical center in Butner, North Carolina, who led the § 4243 evaluation of Hammer.

Wadsworth testified that Hammer suffers from schizophrenia, bipolar disorder, and cocaine addiction. As symptoms of these illnesses, Wadsworth, during her observation of Hammer, observed Hammer display periods of depression, suicidal ideation, paranoia and auditory hallucinations. Additionally, Wadsworth testified that, on two separate occasions, Hammer made threats of violence to staff members at the Butner facility.

In evaluating Hammer's potential danger to the community, Wadsworth applied the Historical Clinical Risk Management Instrument, HCR 20 – volume 3, which is referred to as the gold standard for determining risk of a patient. Wadsworth also considered her interviews with Hammer, observations by other members of the staff at Butner, and documents related to the case. Based upon these considerations, Wadsworth opined that Hammer's unconditional release would pose a substantial danger to person or property. She explained that commitment and psychiatric hospitalization would allow Hammer to receive treatment; give him insight into his mental illness and his need for continued treatment; and allow professionals and Hammer's family members to develop a conditional release plan.

Wadsworth explained that Hammer would not pose a threat or danger if he were adequately treated and if he remained compliant with his medications. However, Wadsworth expressed a concern regarding Hammer's ability to remain compliant with his medications,

which she deemed crucial. In this regard, Wadsworth noted Hammer was off his prescribed medications when he committed the crime of attempted bank robbery.[4]

Notwithstanding her belief in the need for commitment, Wadsworth believes that a lengthy period of commitment would be unnecessary. She testified that her hope for a short commitment period stems from Hammer's lack of history of violence and "supportive and involved family."

### B. Mary's Testimony

Mary, Hammer's mother, testified that Hammer first displayed symptoms of mental illness as a teenager but was not diagnosed until he was twenty-four or twenty-five years old. Hammer has lived with Mary all his life but has been periodically committed (both voluntarily and involuntarily) to mental health institutions. He has also entered rehab for illicit drug abuse.

Mary explained that Hammer has taken medication since his first diagnosis and that she has assisted him in staying compliant with his medication regime. Despite her efforts, she conceded that he would occasionally miss doses and, would sometimes say, "I think I'm okay now" and stop taking his medications.

According to Mary, Hammer is very gentle but will on occasion verbally "unload" on her. Mary believes this process is cathartic.[5] Additionally, Mary testified that, while she has never known Hammer to threaten or harm anybody, he, in "childish frustration," once "beat the side windows out of his car."

Having spoken with Hammer during his time at Butner, Mary does not believe Hammer is a risk to others or property. She assured the Court that if Hammer were to be released, she

---

[4] Hammer's actions on the day in question may best be described as unusual. Hammer wore flip-flops and walked several miles to the bank. Once at the bank, Hammer announced that he had a gun and a bomb, despite having neither. Upon being told by tellers to sit in a chair, Hammer complied and sat down until authorities arrived.

[5] On the morning of the attempted robbery, Hammer "got mad" at Mary and then left to take a walk. It was on this walk that Hammer committed the attempted bank robbery crime.

5

would "do whatever [she] needs to do to get to live where [she] needs to live to have all ... things in place that Joe needs, the medicine, the doctors, and the outpatient treatment type of things or NA meetings." She testified that she would have no hesitation involuntarily committing Hammer if she felt that there was a problem with him. With regard to his medication, Mary, who considers herself the primary person to ensure that Hammer is compliant with his medication,[6] promised that nothing would stop her "from making sure he has every dose because we don't ever want to have to experience this again." However, she admitted that she does not have a specific plan to ensure that Hammer stays on his medications.[7]

### C. Hammer's Testimony

Hammer, who was thirty-seven years old at the time of the hearing, testified that he had been off his medications for five months when he attempted the bank robbery. He explained that he attempted the robbery because of voices in his head, which he attributed to smoking cocaine.

Hammer attributed the threats to the staff at the Butner facility to "something going on in [his] brain" and trying to adapt to a new place. He assured the Court that, were he to be released, he would pose no threat to people or property, would stay on his prescribed medications, and would avoid illicit drugs.

## IV
## Analysis

In reviewing the record, the Court sympathizes with both Mary and Hammer, who are both undoubtedly victims of Hammer's mental illness. The Court, however, must conclude that

---

[6] Mary, who is of a senior age, testified that the "backup" person to primarily care for Hammer is his brother in Texas; however, his brother has never had the opportunity to care for Hammer and as such would not have first-hand experience or familiarity with Hammer's day-to-day needs or issues.

[7] Mary also admitted that, based on her concern about drug recalls and adverse consequences of Hammer's medications, she had some reservations about Hammer taking them. The evidence ultimately showed that there is no single person, including Mary, who can absolutely ensure that Hammer takes his medications as prescribed, other than Hammer himself. Indeed, Mary could not have, and has not had, complete control over Hammer's actions, as evidenced by his conduct on the day of the attempted bank robbery. Hammer is able to go wherever he likes, by foot or by car, since he has his driver's license and drives himself around.

6

Hammer has failed to show that his release would not create a substantial risk of bodily injury or serious damage to property. In reaching this conclusion, the Court credits the unambiguous testimony of Dr. Wadsworth that an unconditional release would pose such a danger to people and property. The Court further finds Mary's and Hammer's promises to ensure proper medication and sobriety, though made in good faith, to be undermined by prior failings in this regard. Simply put, the Court is unconvinced that, in the absence of a specific and credible plan, the promises of either will be kept.

Accordingly, having found that Hammer has failed to meet the standard specified in 18 U.S.C. § 4243(d), it is **ORDERED** that Joseph Grantham Hammer be committed to the custody of the Attorney General pursuant to § 4243(e) for release to the appropriate State official or, if no State will assume responsibility, for hospitalization for treatment in a suitable facility until the requirements of § 4243 are satisfied.[8]

**SO ORDERED**, this 6th day of July, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[8] The Court understands that, in such instance, Hammer would be committed for the purpose of inpatient treatment at a medical facility designated by the Bureau of Prisons, with the goal to develop a treatment and release plan; and that upon release under such a plan, he would be supervised by the United States Probation Office. If the language of this order does not sufficiently achieve such, it will be modified accordingly.